UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In re:

THOMAS M. BROWN, JR. and
TERESA L. BROWN,                                  Case No. 11-69631
                                                              Chapter 7
        Debtors.                                      Hon. Walter Shapero
_____/

JPMORGAN CHASE BANK, N.A.,

       Plaintiff,                                       Adv. Pro. No. 12-04304
v.

TERESA L. BROWN,

       Defendant.
_____/

## OPINION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Plaintiff filed this adversary proceeding against the Debtor-Defendant, alleging that her liability on a personal guarantee of a business loan is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B) because she made false written statements during the loan renewal process by failing to disclose a separate debt. The Court denies Plaintiff's motion for summary judgment, finding that there exist genuine issues of material fact.

### BACKGROUND

Teresa L. Brown ("Defendant") owns a 50% membership interest in Brown Brady, LLC ("Brown Brady"), a single-asset real estate business. The other 50% membership interest is owned by Scott Brady. In 2006, Brown Brady entered into a secured loan agreement with JPMorgan Chase Bank, N.A. ("Plaintiff") to purchase a commercial building in Plymouth,

1

Michigan, which it leased to a tenant. Around May 2011, the loan matured and incident thereto Defendant negotiated with Plaintiff for a loan renewal. Plaintiff's officer Michael McLean was assigned to review the loan renewal transaction, during the course of which he requested and reviewed financial documents from Defendant, including a Personal Financial Statement that Defendant had signed on April 5, 2011. Incident to the loan renewal process, Defendant (a) listed ownership of property at "1021 Anglers Cove," which appears to be or have been her second home in Florida; (b) stated that property was subject to a mortgage in the amount of $110,000 to an unspecified mortgagee and had a market value of $140,000; and (c) answered "no" to the question "Are there any judgments, legal claims, or lawsuits pending?"

The record includes an email chain between Defendant and McLean from August 2011 relating to Defendant's obligation on a debt owed to Suntrust Bank ("Suntrust") from the deficiency on the foreclosed second mortgage on that Florida property, which states in relevant part:

> <u>Defendant</u>: On my second home in FL, it was a forclosure [sic] with a 1st and 2nd involved. Bank of America (1st) was made whole, Suntrust (2) was short and wrote it off as a charge off. This happened several years ago and our attorney is actually trying to negotiate a settlement in case they do come after us.
>
> <u>McLean</u>: On the second home in FL, how much was charged off? The reason I'm asking these questions is that if [Brown Brady's tenant] somehow gets out of the lease and you have to pay the mortgage payment personally, we are showing it cannot be done[.]
>
> <u>Defendant</u>: On the home in FL, there was $250,000 charged off in $208,000. My attorney knows about it and will try to negotiate that if need be.
>
> <u>McLean</u>: Any settlement with Suntrust, will you be able to cover that as I know they will come after you for the deficiency balance[?]

Def. Reply Dkt. 35 Ex. C. Their discussions also included, among other things, Defendant's personal living expenses, her children's special medical expenses, Brown Brady's cash flows, and Brown Brady's history of timely payment to Plaintiff.

McLean reviewed this information and recommended the renewal of the loan, and it was approved on October 5, 2011. The interest rate was 4.5% above prime, due at least in part to the poor credit scores of Defendant and Brown Brady's other partner. Incident to the closing, Defendant signed a Business Loan Agreement, a Promissory Note for $399,105.08, and a Commercial Guarantee, included in some of which were representations and warrantees that:

> (G) no material adverse change has occurred in [Defendant's] financial condition since the date of the most recent financial statements provided to [Plaintiff] and no event has occurred which may materially adversely affect [Defendant's] financial condition;
>
> (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against [Defendant] is pending or threatened;
>
> ***
>
> (K) as of the date hereof, and after giving effect to this Guaranty, (1) [Defendant] is and will be solvent, (2) the fair saleable value of [Defendant's] assets exceeds and will continue to exceed [Defendant's] liabilities (both fixed and contingent), (3) [Defendant] is and will continue to be able to pay [Defendant's] debts as they mature[.]

Compl. Ex. D. Those signed documents are collectively referred to as "the Documents." It was indicated that on October 11, 2011, Defendant received from Plaintiff the Documents for her signature, and the following day she signed them and directed her assistant to send them back to Plaintiff. Defendant indicates that after she signed the Documents, she left on a business trip and did not return to her home until October 17, 2011. About that time, Suntrust filed a state court complaint against Defendant and her husband. The certificate of service indicates that service was made on October 12, 2011 at 2:30pm, apparently after Defendant had left for her business trip.

3

On November 16, 2011, Defendant and her husband filed a joint Chapter 7 bankruptcy petition. Defendant's statement of financial affairs indicates that she paid a fee to her current bankruptcy counsel on September 28, 2011. In her schedules, Defendant listed an unsecured debt to Suntrust in the amount of $249,307.45, a secured mortgage debt to Bank of America on the Florida property, and the loan guarantee debt owed to Plaintiff. Her liabilities were approximately double her assets. Defendant testified at the meeting of creditors that, at the time she signed the Documents, she was contemplating bankruptcy and viewed it as an eventual probability.

Plaintiff alleges that Suntrust, through its counsel, had sent a debt-collection letter dated July 19, 2011, and that a few days later, Defendant's current bankruptcy counsel responded to Suntrust's counsel with a voicemail message indicating that he had been retained to handle a bankruptcy case for Defendant. Plaintiff also contends these were the only communications or settlement discussions with Suntrust. Plaintiff submitted affidavits supporting these assertions. Defendant disputes this, noting the indicated email chain and stating that her attorney had not even been assigned her case at the time Plaintiff alleges it received that purported voicemail. Defendant also contests that the voicemail even threatened bankruptcy. Defendant's counsel supported these contrary allegations with his own affidavit. Defendant argues that her initial consultation with counsel was with regard to debt settlement and other non-bankruptcy options. She asserts that she had no choice but to resort to bankruptcy when she became aware of the filed Suntrust complaint.

Plaintiff filed this proceeding under 11 U.S.C. § 523(a)(2)(B) on the essential basis that Defendant should not receive a discharge of the personally guaranteed loan liability because she

4

provided a false account of her financial situation by failing to disclose the Suntrust obligation. That statute states that a debtor shall not be discharged for any debt:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by…
>
> > (B) use of a statement in writing--
> >
> > > (i) that is materially false;
> > >
> > > (ii) respecting the debtor's or an insider's financial condition;
> > >
> > > (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> > >
> > > (iv) that the debtor caused to be made or published with intent to deceive[.]

### SUMMARY JUDGMENT STANDARD

Fed.R.Civ.P. 56 provides the statutory basis for summary judgment, and is made applicable to adversary proceedings via Fed.R.Bankr.P. 7056. "Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Kalamazoo River Study Group v. Rockwell Intern. Corp., 171 F.3d 1065, 1068 (6th Cir. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). "The initial burden is on the moving party to demonstrate that an essential element of the non-moving party's case is lacking." Id. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis original). "There is no genuine issue of material fact when 'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" Williams v. Leatherwood, 258 Fed. Appx. 817, 820 (6th Cir. 2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

# DISCUSSION

I. <u>Defendant Made a Statement in Writing Respecting her Financial Condition, but There are Genuine Issues of Material Fact as to Whether it was Materially False</u>

There is no dispute that Defendant signed the Documents or that such related to her financial condition. Defendant however disputes that her representations were materially false. For a statement to be materially false, it must provide information that "offers a substantially untruthful picture of the financial condition of the debtor that affects the creditor's decision to extend credit." <u>Insouth Bank v. Michael</u> (<u>In re Michael</u>), 265 B.R. 593, 598 (Bankr. W.D. Tenn. 2001) (citing <u>Matter of Bogstad</u>, 779 F.2d 370, 375 (7th Cir. 1985). The representation made by Defendant in the Documents was that there was no "pending or threatened" suit or claim. Defendant argues that Suntrust did not serve her with the state court complaint until after she had already signed the Documents. Defendant does not contest, however, that Suntrust's counsel sent her a debt-collection letter dated July 19, 2011. This letter was, in and of itself, sufficient to alert Defendant to at least "threatened" litigation.

Defendant disputes the materiality of any false statement because Plaintiff allegedly approved the loan renewal due to a number of considerations. Although the Suntrust obligation was not the only factor affecting her present and future solvency, it may or may not have been a material one. Insofar as Defendant argues that the omission was immaterial, either because it was not the determinative factor for Plaintiff's approval of the loan renewal or because Defendant implicitly or explicitly made Plaintiff aware of the Suntrust obligation, such arguments are also analyzed under the "reasonable reliance" prong, *infra*. The Court concludes that Defendant's failure to list the Suntrust obligation on the Personal Financial Statement at least presents a genuine issue of material fact as to its materiality to Plaintiff's decision to renew the loan, which is dependent on the totality of the factual circumstances.

II. **There are Genuine Issues of Material Fact as to Whether Plaintiff Reasonably Relied on Defendant's Representations**

Reasonable reliance is to be objectively determined based on the totality of the circumstances. Insouth Bank, 265 B.R. at 598. Factors that may be considered include: (a) previous business dealings between the debtor and the creditor; (b) whether there existed any warnings that would alert a reasonably prudent person to discover the misrepresentations; (c) whether a minimal investigation would have uncovered the inaccuracies in the financial statements; and (d) the standards or customs of the creditor's industry and the creditor's own standard practices for evaluating creditworthiness. Id. (citations omitted).

Plaintiff contends that, in reviewing and approving the loan renewal, it relied upon Defendant's statements and that it would not have approved it had Defendant disclosed either the Suntrust obligation or her consideration of bankruptcy. Plaintiff contends that even partial reliance would be sufficient, citing In re Capelli, 261 B.R. 81, 91 (Bankr. D. Conn. 2001). Defendant argues that the loan was actually renewed because of several other factors, including: (a) Brown Brady had a history of prompt payment to Plaintiff; (b) the property that Brown Brady leased had a tenant with a history of prompt payment; and (c) that subject property was appraised for over $390,000.

Defendant argues that Plaintiff was well aware of the financial pressures facing both Defendant and Brown Brady, including Defendant's inability to pay on her personal guarantee in the event Brown Brady's tenant stopped paying on its lease. Defendant points to the above-quoted email chain between her and McLean, which indicates that he knew or should have known about the debt or potential debt owed to Suntrust, and the likelihood that such would result in Defendant being sued thereon. McLean admitted by way of affidavit that Defendant provided him with Defendant's credit report, which Defendant argues would have alerted

7

McLean of all obligations, including that to Suntrust. Defendant argues that Plaintiff's allegations are disingenuous because Plaintiff decided to approve the transaction and, to that end, intentionally overlooked Defendant's references to the Suntrust obligation or concluded that such was not sufficiently material to the loan renewal, given the other facts. In essence, Defendant argues that even if such disclosures were made, Plaintiff would not have reasonably relied on such because it desired or was otherwise inclined to approve the renewal in any event.

Defendant thus raises genuine issues of material fact as to whether Plaintiff reasonably relied on Defendant's representations in the Documents. The noted email chain, given the other facts, could ascribe to Plaintiff knowledge of the Suntrust obligation, or at the very least, to have created a situation where Plaintiff should have conducted some minimal prudential investigation. Insofar as Plaintiff claims that Defendant further misled McLean by falsely informing him of non-existent settlement negotiations with Suntrust, such is inconsistent with Plaintiff's main allegation that it was wholly unaware of the Suntrust liability in the first place.

> III. <u>There are Genuine Issues of Material Fact as to Whether Defendant had the Requisite Intent to Deceive</u>

Discharge will be denied if the debtor either intended to deceive or made the statement with gross recklessness as to its truth. <u>Martin v. Bank of Germantown</u> (<u>In re Martin</u>), 761 F.2d 1163, 1167 (6th Cir. 1985); <u>Investors Credit Corp. v. Batie</u> (<u>In re Batie</u>), 995 F.2d 85, 90 (6th Cir. 1993). Plaintiff argues that Defendant's conduct satisfies that standard because it was either patently deceptive or, at the very least, grossly reckless. Plaintiff relies primarily on the timeline of events, which it argues is indicative of Defendant's intent to deceive, specifically: (a) prior to signing the Documents, Defendant retained an attorney for what Plaintiff argues is the apparent purpose of filing bankruptcy; (b) about two weeks after Defendant represented to Plaintiff she was solvent, she took a credit counseling course, which is a prerequisite for filing bankruptcy;

8

and (c) Defendant later admitted that around the time she signed the Documents, she was considering filing for bankruptcy and viewed it as an eventual probability.

Defendant argues that when she made the written representations, she could not have had intent to deceive because she did not actually become aware of the Suntrust lawsuit until after she returned from her business trip and discovered the complaint. However, as previously discussed, Defendant's specific knowledge of the lawsuit is not necessary, provided that she knew of the threat of litigation. Defendant also alleges she openly discussed her financial difficulties with McLean, including the Suntrust obligation. Further, she states by way of affidavit that around the time she made the written representations, she viewed bankruptcy as a mere possibility, not a certainty. Exploration and consideration of the option of filing bankruptcy does not perforce establish the requisite intent. Defendant states that she had hoped to settle the Suntrust obligation, which later resulted in the lawsuit that contributed to her insolvency. Defendant argues that she acted in good faith at all times, particularly because even after her bankruptcy filing, Brown Brady continued paying Plaintiff on the loan until its tenant breached the lease, which forced Brown Brady to default. In Defendant's view, it would be illogical for her to voluntarily submit to a lengthy and arduous loan renewal process, all the while intending to file bankruptcy to discharge her obligation on it.

Questions of intent, scienter, and good faith are generally fact-intensive. The foregoing clearly also shows that there exist genuine issues of material fact as to Defendant's intent to deceive or gross recklessness.

## CONCLUSION

There exist genuine issues of material fact as to many of the necessary elements of § 523(a)(2)(B), and accordingly, Plaintiff has not met its burden. Therefore, Plaintiff's Motion for Summary Judgment is denied. The Court is contemporaneously entering an appropriate order.

.

**Signed on December 06, 2013**

                                                    **/s/ Walter Shapero**
                                                    **Walter Shapero**
                                                    **United States Bankruptcy Judge**

10

12-04304-wsd    Doc 67    Filed 12/06/13    Entered 12/09/13 08:09:31    Page 10 of 10